UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

:

EDWARD D. MULLINS, et al.,                         :

:

Plaintiffs,              :

:        <u>OPINION AND ORDER</u>

- against -                            :

:        04 Civ. 2979 (SAS)

CITY OF NEW YORK and THE NEW        :

YORK CITY POLICE DEPARTMENT,      :

:

Defendants.              :

:

---------------------------------------------------------X

SHIRA A. SCHEINDLIN, U.S.D.J.:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/21/2008

## I.    INTRODUCTION

Plaintiffs are New York City police sergeants who brought suit against the City and its police department to recover overtime compensation to which they are allegedly entitled under the Fair Labor Standards Act of 1938 (the "FLSA"), but for which they have not been paid. Following the close of discovery with respect to six categories of sergeants, plaintiffs moved for partial summary judgment on the issue of defendants' liability. Plaintiffs' motion was decided by Opinion and Order dated November 6, 2007 ("the November 6 Order"), which was subsequently certified for immediate appeal to the Second Circuit Court of Appeals, and is currently pending. No trial date has been scheduled.

By letter dated February 13, 2008, plaintiffs requested a conference to

seek an order temporarily restraining the New York City Police Department ("NYPD") from "retaliating against plaintiffs due to their testimony in the [] action and attempting to coerce plaintiffs to alter their sworn deposition testimony."[1] According to plaintiffs, the need for a temporary restraining order ("TRO") arose when the NYPD Bureau of Internal Affairs ("IAB") ordered Sergeant Anthony Cioffi, a plaintiff, to submit to questioning regarding statements made during his deposition in this action. On February 12, 2008, Sergeant Cioffi was interrogated by lieutenants from the IAB, Intelligence Section, (the "February 12 Interrogation") pursuant to an investigation into an allegation made by defendants' counsel, Seyfarth Shaw LLP, that he had committed perjury during that deposition.

On March 5, 2008, the Court issued a TRO enjoining defendants from: (1) engaging in any further investigation of Sergeant Cioffi relating to his testimony or participation in this case; (2) pursuing any disciplinary proceedings against Sergeant Cioffi based on the February 12 Interrogation; and (3) investigating or disciplining any plaintiff based on his or her testimony or participation in the case. Plaintiffs now ask the Court to preliminary enjoin defendants from each of these acts. For the following reasons, plaintiffs' motion

---

[1]     2/13/08 Letter from Gregory K. McGillivary, plaintiffs' counsel, to the Court, at 1.

for a preliminary injunction is granted.

## II.    BACKGROUND

### A.    Procedural History[2]

Over 4,300 police sergeants employed by the NYPD brought this suit on behalf of themselves and those similarly situated to recover overtime compensation to which they are allegedly entitled under the FLSA for the period from April 19, 2001 to the present.  Shortly after the complaint was filed in April 2004, the parties commenced discovery pursuant to a Joint Proposed Discovery Plan, which, inter alia, ordered the parties to conduct discovery into whether plaintiffs are exempt from the FLSA's provisions.  Pursuant to a December 2004 Scheduling Order, the parties were directed to conduct discovery into the sergeants' job duties.  In light of the large number of plaintiffs, the parties entered into a Joint Stipulation and Order Regarding Test Plaintiffs in May 2005, agreeing to identify a limited number of deponents from sixteen job categories organized into three groups so that discovery with respect to each group could proceed expeditiously and according to staggered deadlines.

The first group of test plaintiffs comprised six job categories of

---

[2]      For an extensive account of the facts underlying the above-captioned action, see *Mullins v. City of New York*, 523 F. Supp. 2d 339 (S.D.N.Y. 2007). This section presents only those facts relevant to the instant dispute.

3

sergeants from two departments. Plaintiffs moved for partial summary judgment

on the issue of defendants' liability with respect to this first group. The November

6 Order granted summary judgment in favor of defendants on the issue of liability

for the period from April 19, 2001 through August 23, 2004. Plaintiffs' motion

was denied for the period following August 23, 2004. By Memorandum Opinion

and Order dated January 9, 2008, the Court certified the November 6 Order for

immediate appeal to the Second Circuit pursuant to section 1292 of title 28 of the

United States Code.

## B. The February 12 Interrogation

On February 11, 2008, the NYPD IAB ordered Sergeant Cioffi – a

test plaintiff from the first group of sergeants and member of the Anti-Crime unit

of the Housing Bureau – to submit to an interrogation as part of an investigation

into "his apparent violations of NYPD rules and regulations."[3] Lieutenants from

IAB's Intelligence Section commenced the interrogation by informing Sergeant

Cioffi that he was being questioned as a "subject officer" of the NYPD's Patrol

Guide Procedure § 206-13 ("PG § 206-13") official investigation.[4] Sergeant

---

[3]     2/12/08 Letter from Lorie E. Almon, defendants' counsel, to Andrew
C. Quinn, plaintiffs' counsel, at 1.

[4]     2/12/08 Transcript of Interrogation of Sergeant Anthony Cioffi
("2/12/08 Tr.") at 3:15-19. Patrol Guide § 206-13 interrogations are conducted

4

Cioffi was also told that Seyfarth Shaw, the complainant in the proceeding, alleged that he had committed perjury and made false statements during his sworn deposition in this action on November 15, 2005 (the "November 15 Deposition").[5]

Sergeant Cioffi was represented at his interrogation by Bruno Gioffre, counsel for the Sergeants Benevolent Association. Sergeant Peter McCormack, Technical Director for the Sergeants Benevolent Association, was also in attendance. Sergeant Cioffi was given one and a half hours to review the transcript of the November 15 Deposition with Gioffre.[6] At the outset of the interrogation, Gioffre stated that although Sergeant Cioffi would answer all questions, as required, he objected to the investigation as a retaliatory act in violation of the FLSA.[7]

During the interrogation, which lasted approximately four hours, Sergeant Cioffi was questioned about specific responses given at his deposition, which the lieutenants referenced by page and line number from the deposition

when members of the NYPD are accused of "administrative wrongdoing (*i.e.*, non-criminal, employment related matters)." Affirmation of Bruno V. Gioffre, Jr. ("Gioffre Aff."), plaintiffs' counsel, attached to Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction ("Pl. Mem."), ¶ 6.

[5]     *See* 2/12/08 Tr. at 5:9-12.

[6]     *See* Gioffre Aff. ¶ 10.

[7]     *See* 2/12/08 Tr. at 5:16-6:8.

5

transcript.[8] The lieutenants asked Sergeant Cioffi to explain his responses,[9] often rephrasing or reiterating the deposition questions,[10] posing hypotheticals,[11] and occasionally commenting on Sergeant Cioffi's responses.[12] Among his explanations, Sergeant Cioffi explained that the difference between certain responses given at the November 15 Deposition and those given at the February 12 Interrogation could be attributed to the distress as well as "duress" that he felt

---

[8] *See, e.g., id.* at 131:15-18 (Lt. Diecidue: "[Line] 5: 'Your team does not produce results[,] there is absolutely no consequence to you as a sergeant?' [Line] 7: 'To me, no. We do what we can.' Would there [be] consequences if your team does not produce?").

[9] *See, e.g., id.* at 64:6-9 (Lt. Diecidue: "Can you explain – this is your testimony, correct? Sgt. Cioffi: "Yes." Lt. Diecidue: "Can you explain what you meant when you responded this way?").

[10] *See, e.g., id.* at 77:21-78:3 (Lt. Diecidue: "[Line] 21, Question: 'Do you review the computer generated reports?' Answer: 'Review them? No. At times, I look them over, but I don't review them.' Can you explain what you mean by your statements here? You're asking, you're asked if you review them. Do you review reports?").

[11] *See, e.g., id.* at 97:11-13 (Lt. Diecidue: "Would you tell a cop, a uniformed cop or one of your cops to stand there on that crime scene when you go out and look for the bad guy?").

[12] *See, e.g., id.* at 106:3-5 (Lt. Dorsey: "Okay. Because your answer to me sounds like you're demeaning yourself here and in this whole sense now."). *See also id.* 96:8-11 (Lt. Diecidue: "Your answer is saying again, not taking charge of a crime scene. Sgt. Cioffi: "Right." Lt. Diecidue: "Why would you say that?").

6

at points during the deposition.[13]  Sergeant Cioffi also represented that he did not

feel such distress or duress at the February 12 Interrogation and as a result, his

responses could now be regarded as more accurate.[14]

## C.    Scope of the TRO

Plaintiffs contend that defendants have already violated the TRO by

using their investigations into certain plaintiffs' alleged perjury – initiated prior to

the entry of the TRO and still pending following the TRO – as a factor in

considering those plaintiffs' applications to retire from the NYPD during the

pendency of this action.[15]  By letter dated March 14, 2008, plaintiffs informed the

Court that Sergeant Eddie Scott, a test plaintiff, also became the subject of an IAB

investigation into alleged perjury committed during his deposition.  Because the

---

[13]     *See, e.g., id.* at 128:3-7 (Sgt. Cioffi:  "Again, this was a time when
[defendants' attorney] was kind of just firing off questions at me and being a little
abrasive . . . this answer[,] I was probably under a little bit of duress.");  130:7-9
(Sgt. Cioffi:  "Like I said, you know, I probably didn't hear it correctly.  I was in a
little of duress.  [Defendants' counsel] continued to be abrasive at this point.").

[14]     *See id.* at 130:12-17, 20-22 (Lt. Dorsey:  "Sergeant, are you under
duress right now?  Are you giving these answers freely?"  Sgt. Cioffi:  "No, I'm
giving these answers freely."  Lt. Dorsey:  "Okay, so you don't feel you're under
the same distress right now that you did . . ."  Sgt. Cioffi:  "No."  Lt. Dorsey:  "So
the answers you're giving now are more accurate answers than what you
previously gave?"  Sgt. Cioffi:  "Obviously, yes.").

[15]     *See* 3/14/08 Letter from Stephen P. Younger, plaintiffs' counsel, to
the Court.

7

Court ordered all such investigations to be temporarily restrained, the NYPD contends that it is precluded by the Court from reviewing Sergeant Scott's plea agreement with respect to an unrelated charge until the pending perjury investigation is concluded. Absent the review and acceptance of the plea agreement, Sergeant Scott, who became eligible to retire earlier this year, is now unable to retire in good standing.

## III. APPLICABLE LAW

### A. Preliminary Injunction

"The district court has wide discretion in determining whether to grant a preliminary injunction . . . ."[16] Nonetheless, a preliminary injunction is an extraordinary and drastic remedy that should not be routinely granted.[17] In order to obtain a preliminary injunction, a plaintiff must ordinarily demonstrate: (1) the possibility of irreparable harm; and (2) either (a) a likelihood of success on the merits, or (b) a sufficiently serious question going to the merits combined with a

---

[16] *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quotation marks omitted).

[17] *See Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

balance of hardships tipping decidedly in favor of the moving party.[18]

Irreparable harm is "an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages."[19] In determining whether a plaintiff has demonstrated a likelihood of success on the merits of "his ultimate case, a court is not called upon finally to decide the merits of the controversy. It is necessary only that the court find that the plaintiff has presented a strong prima facie case to justify the discretionary issuance of preliminary relief."[20]

## B.    FLSA Retaliation

The FLSA provides that it is "unlawful for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding

---

[18]      *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 152-53 (2d Cir. 2007); *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.*, 211 F.3d 21, 24 (2d Cir. 2000).

[19]      *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 97 (2d Cir. 2005).

[20]      *Gibson v. U.S. Immigration & Naturalization Serv.*, 541 F. Supp. 131, 137 (S.D.N.Y. 1982) (citation omitted). *Accord Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 135-37 (W.D.N.Y. 2003) (finding that plaintiffs demonstrated a likelihood of success on the merits of their FLSA retaliation claim where they established a prima case of retaliation).

under [the FLSA] . . . ."[21] In order to establish a prima facie case of retaliation in violation of the FLSA, a plaintiff must show "(1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."[22]

## IV. DISCUSSION

### A. Irreparable Harm

Plaintiffs contend that the NYPD IAB's investigation of Sergeant Cioffi "threatens to undermine [their] right to petition this Court for relief."[23] Because the right to petition the Government via the courts for redress of grievances is guaranteed by the First Amendment,[24] and because "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably

---

[21]     29 U.S.C. § 215(a)(3).

[22]     *Lai v. Eastpoint Intern, Inc.*, No. 99 Civ. 2095, 2000 WL 1234595, at *3 (S.D.N.Y. Aug. 31, 2000) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)).

[23]     Pl. Mem. at 7.

[24]     *See* U.S. Const. amend. I. *See also California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition" guaranteed by the First Amendment).

constitutes irreparable injury,"[25] plaintiffs argue that this prong is easily satisfied. According to plaintiffs, by initiating an investigation into the veracity of even a single plaintiff's deposition testimony, defendants have created a "Catch-22" situation: "on the one hand, plaintiffs can stand by their prior deposition testimony and face potential termination or other discipline . . . alternatively, plaintiffs can recant the challenged testimony, thereby protecting their employment but compromising pursuit of their FLSA claims."[26]

Relying heavily on this Court's decision in *Alvarez v. City of New York ("Alvarez II")*,[27] defendants argue that "Sergeant Cioffi's alleged harm is speculative at best and [p]laintiffs have offered no evidence that, as a target of an internal NYPD investigation, he faces any imminent danger."[28] Further, defendants contend that any inhibition of the First Amendment rights of Sergeant Cioffi or any other plaintiff based on the initiation of an IAB proceeding constitutes an "'incidental inhibition'" rather than "'direct penalization'" of those

---

[25]     *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

[26]     Reply Memorandum of Law in Further Support of Plaintiffs' Motion for a Preliminary Injunction ("Pl. Reply") at 6-7.

[27]     2 F. Supp. 2d 509 (S.D.N.Y. 1998)).

[28]     Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Def. Opp.") at 10.

11

rights and therefore, does not constitute irreparable harm warranting injunctive relief.[29]

Defendants also assert that injunctive relief is inappropriate here because any alleged injuries would arise only if Sergant Cioffi was actually charged and found guilty of an offense.[30]  No charges have been brought against him, and in the event that they are, defendants contend that Sergeant Cioffi "has the opportunity to exonerate himself during the investigation and during any disciplinary proceeding that may take place . . . ."[31]  According to defendants, if Sergeant Cioffi is found guilty of misconduct, state law remedies, including monetary damages, are available to him.

While the Second Circuit has yet to address a similar set of facts, this Court's prior cases are instructive.  As an initial matter, defendants' reliance on *Alvarez II* is misplaced.  In that case, Judge Denny Chin denied plaintiff's motion to preliminarily enjoin a NYPD IAB investigation into his alleged misuse of highly confidential NYPD records to support his now-settled lawsuit.[32]  In

[29]     *Id.* at 9 (quoting *Alvarez II*, 2 F. Supp. 2d at 514).

[30]     *See id.* at 11.

[31]     *Id.* at 12.

[32]     *See Alvarez II*, 2 F. Supp. 2d at 511.

12

rejecting plaintiff's argument that he suffered a threat of irreparable harm because the IAB investigation would have a chilling effect on his First Amendment right to free speech, Judge Chin found no direct penalization of plaintiff's First Amendment rights where plaintiff had "publicly and vociferously" continued to raise allegations of police misconduct.[33] Judge Chin also concluded that plaintiff had failed to demonstrate any imminent danger resulting from being a target of the investigation, particularly since he had not yet been charged or found guilty of any offense.[34]

The circumstances in *Alvarez II* vary significantly from the facts at issue here. At the time of the plaintiff's IAB "disciplinary interview" in *Alvarez II*, there was no pending litigation between the plaintiff and the NYPD or the City of New York. The IAB investigation focused on conduct that had allegedly occurred in a since-settled action, not on testimony given in a pending matter. Indeed, the Court observed that the plaintiff had settled his lawsuit without securing "any explicit representations that the NYPD would not open any further investigations or refrain from completing any existing ones."[35] As a result, the

---

[33]   *Id.* at 514.

[34]   *See id.*

[35]   *Id.* at 512.

13

First Amendment right to petition the Government through the court for redress of grievances was not implicated at all. Instead, it was the plaintiff's First Amendment right to speech that was allegedly curtailed, but the Court disposed of that claim based on its observation that plaintiff had "not acted like a person whose speech has been substantially deterred."[36]

By contrast, Judge Chin's subsequent issuance of a preliminary injunction in *Alvarez v. City of New York* ("*Alvarez III*")[37] is directly on point. Following the Court's denial of the plaintiff's motion for a preliminary injunction in *Alvarez II*, the NYPD proceeded with its investigation but then expanded its scope to include allegations that the plaintiff had made false official statements in his complaint in *Alvarez II*.[38] Determining that "the circumstances . . . have changed," Judge Chin held that irreparable harm now existed where the "commencement and prosecution of the departmental disciplinary proceedings against [the plaintiff] for making purportedly false statements in his complaint in *Alvarez II*," – a pending action – "is directly interfering with his right of access to

_____

[36]   *Id.* at 514.

[37]   31 F. Supp. 2d 334 (S.D.N.Y. 1998).

[38]   *See id.* at 335.

14

the courts and his ability to vindicate his rights . . . ."[39] Where, inter alia, the

plaintiff's refusal to answer the questions posed during the course of the

investigation could result in his termination, the questioning was conducted by

"officers who were part of the management of the very entity he was suing," and

the NYPD was not itself required to provide reciprocal discovery, Judge Chin

found plaintiff's ability to prosecute his action to be impaired.[40]

Similar to the circumstances in *Alvarez III*, the actions taken by the

NYPD during the pendency of this case present a threat of irreparable harm. *First*,

Sergeant Cioffi's refusal to answer the questions posed to him at the IAB

interrogation could subject him to departmental charges, which could result in his

dismissal from the NYPD.[41] While the NYPD states that "no plaintiff has sought

to withdraw from the *Mullins* lawsuit; nor would the NYPD expect them do so,"[42]

the statement carries little weight. As far as the Court is aware, Sergeant Cioffi is

the first plaintiff interrogated by the IAB in connection with allegations relating to

testimony given in this case. No plaintiffs have dropped out of the case *yet*, but I

---

[39]     *Id.* at 344.

[40]     *Id.* at 345.

[41]     *See* 2/12/08 Tr. at 4:3-6.

[42]     Def. Opp. at 9.

15

have no doubt that some plaintiffs – particularly the test plaintiffs who have been deposed – may choose to do so should plaintiffs' instant motion be denied.[43]

*Second*, the interrogation was conducted by lieutenants from the NYPD, who, like the interrogators in *Alvarez III*, are superior officers considered to be part of the management of NYPD, a litigant in the pending action. *Third*, the interrogation essentially gave the NYPD a second chance at deposing Sergeant Cioffi, as evidenced by the transcript. The NYPD identified specific deposition questions, re-posed them to Sergeant Cioffi during the interrogation, and was thereby able to elicit four hours of further testimony from a plaintiff long after discovery has ended.

In finding a threat of irreparable harm, I reject defendants' contention that Sergeant Cioffi's harm is speculative at best, and that the absence of formal charges somehow precludes or militates against the need for an injunction. Defendants' focus upon the outcome of the investigation as determinative of whether there has been harm is misplaced. Indeed, courts have found the initiation of the investigation itself to present a risk of irreparable harm. In *Karmel v. City*

---

[43]     *See* Declaration of Sergeant Paul Capotosto, City-Wide Secretary for Sergeants Benevolent Association, attached to Pl. Reply, ¶ 5 (stating that he received calls from certain test plaintiffs who expressed fear that they would be subjected to IAB interrogations for their participation in this action).

*of New York*, Judge Deborah A. Batts of this Court enjoined the NYPD from

interrogating the plaintiff pursuant to a PG § 206-13 investigation that had been

initiated while her suit was pending.[44] Holding that there was a threat of

irreparable harm even when the interrogation had not yet occurred, Judge Batts

found "no reason why [the Court] should wait" for the plaintiff to be placed

> between the Scylla of participating in the [PG § 213] hearing
> without the safeguards of the Federal Rules of Civil Procedure, at
> the risk of prejudicing her action against Defendants, and the
> Charybdis of refusing to appear or to answer certain questions, at
> the risk of being suspended without pay . . . before finding that a
> threat of irreparable harm exists.[45]

Similarly, I am convinced that the NYPD's recent actions have

threatened plaintiffs with irreparable harm of the type that cannot be adequately

remedied by money damages. Failing to enjoin the instant proceeding against

Sergeant Cioffi or similar proceedings against any of the plaintiffs would allow

defendants to compel additional testimony on the very topics at issue in this

pending litigation, but outside of the bounds of the judicial process and on

defendants' terms.

---

[44]     *See* 200 F. Supp. 2d 361 (S.D.N.Y. 2002).

[45]     *Id.* at 366.

17

## B. Likelihood of Success on the Merits

The parties dispute whether the Court must find that plaintiffs have demonstrated a likelihood of success on the merits of a FLSA retaliation claim, or whether they may be held to the less stringent standard of demonstrating sufficiently serious questions going to the merits combined with a balance of hardships tipping decidedly in their favor. Because plaintiffs claim that they are entitled to an injunction even under the first, more stringent standard, the Court evaluates whether plaintiffs are likely to succeed on the merits of a FLSA retaliation claim.

Because plaintiffs have presented a strong prima facie case of retaliation in violation of the FLSA, I find that they have demonstrated a likelihood of success on the merits of their claim. *First*, plaintiffs' participation in this action constitutes protected activity known to defendants. While defendants correctly contend that "providing false statements under oath at a deposition" is not a protected activity under the FLSA,[46] this entirely misses the point. There is no question that perjury finds no protection under the FLSA, or any law for that matter, and plaintiffs do not advance that argument. Rather, it is the activity of initiating and participating in this lawsuit that constitutes the protected activity

---

[46]     Def. Opp. at 13.

referred to in this first element of the retaliation claim.

  *Second*, the initiation of an official PG § 206-13 investigation of any plaintiff as the "subject officer," with termination from the NYPD as a possible consequence, constitutes an employment action disadvantaging that plaintiff. *Third*, the sequence of events strongly suggests that retaliation can be found here. Defendants maintain that "the NYPD simply did not believe it could condone perjurious testimony,"[47] but the timing of its investigation into Sergeant Cioffi's alleged perjury undermines that contention. As plaintiffs point out, Sergeant Cioffi's deposition occurred in November 2005, yet defendants waited until February 11, 2008 to notice his interrogation despite the fact that his deposition testimony was the sole focus of the investigation. Tellingly, in the interim period, discovery with respect to the first group of test plaintiffs closed and the Court issued the November 6 Order, both events possibly spurring defendants to seek, albeit inappropriately, additional discovery outside of the context of the lawsuit.

  I am not convinced by defendants' argument that allegations of perjury committed by members of the NYPD is time-sensitive and significant enough to warrant investigations during the pendency of this action. If that were the case, it is unclear why investigations were not commenced sooner. According

---

[47]  *Id.* at 9.

to defendants, in January 2006, Seyfarth Shaw forwarded to defendants copies of deposition transcripts for those plaintiffs who had already been deposed.[48] In December 2006, Lieutenant Diecidue of IAB was instructed by his supervisor "to commence an investigation into the deposition testimony of supervisors given in the *Mullins* case [because] it appeared that some testimony was not entirely truthful."[49] Based on this time-line, it is not evident why the NYPD waited over one year to initiate the investigation of Sergeant Cioffi. As a result, the "sequence of events also points strongly in favor of a conclusion of retaliation."[50]

Finally, Seyfarth Shaw's allegations of perjury committed during the depositions of certain plaintiffs strikes the Court as inappropriate given the nature of the claims in this case. As plaintiffs point out, Sergeant Cioffi's testimony (and presumably, the testimony of the other test plaintiffs, as well) "simply is not of a nature to form the basis for a perjury charge."[51] The test plaintiffs testified to their actual duties, their interactions vis a vis the police officers in their units while out in the field, and their responsibilities as they understood them. The questions of

---

[48] *See id.* at 3. *See also* Declaration of Lorie E. Almon in Opposition to Plaintiffs' Motion for a Preliminary Injunction, attached to Def. Opp., ¶ 2.

[49] Def. Opp. at 3.

[50] *Alvarez III*, 31 F. Supp. 2d at 346.

[51] Pl. Reply at 4.

what sergeants actually do, whether they are supervisors, whether their primary

duty is management, and whether their suggestions as to the change of status of

other employees are given weight constitute precisely what is at issue in this

litigation and precisely what will be decided by the trier of fact.

As a result, plaintiffs' deposition testimony regarding their duties,

responsibilities, and authority as sergeants should not be the basis for perjury

charges when the whole point of the lawsuit is to determine what those

responsibilities are. To allow NYPD lieutenants, who have supervisory authority

over the sergeants, to challenge plaintiffs about their responses regarding those

duties and responsibilities in the context of an internal investigative proceeding

with potential employment consequences strikes the Court as unfair or worse.

Defendants, who are parties in a pending lawsuit, would simply be able to decide

the case in their own favor by concluding that a plaintiff had committed perjury

during his deposition. To permit a party to be its own jury is inherently unjust.

The Court has reviewed the transcript and the tape recording of the

IAB interrogation of Sergeant Cioffi. The tone of the interrogation was fairly even

and lacked the "edge and intensity" that Judge Chin had observed in the interviews

of the plaintiff in *Alvarez III*.[52] However, the substance and nature of the

---

[52]    *Alvarez III*, 31 F. Supp. 2d at 346.

21

questions posed to Sergeant Cioffi make clear that the IAB collected those responses from his deposition that it found most questionable, and used the interrogation as a means to pressure Sergeant Cioffi to recant outside of the bounds of this litigation.

While it is true that the NYPD has an obligation to investigate acts that violate its internal regulations as well as the law, I am not convinced that the investigation into Sergeant Cioffi's alleged perjury, or that of any other plaintiff in this action, presents a pressing circumstance that must be addressed during the pendency of the litigation. Rather, defendants' own actions belie their attempt to characterize the need for investigations as time-sensitive or otherwise warranted while this action is ongoing. Defendants are correct that the pendency of an action in court does not automatically stay any and all disciplinary proceedings that the NYPD, in its discretion, may commence against its members. In this case, however, based on the factors stated above including the nature of Seyfarth Shaw's allegations and the connection to the pending suit, "the NYPD may not take the matter into its own hands" and should instead "attack the allegations in this Court, within the context of the lawsuit."[53]

---

[53]    *Id.* Moreover, where "the situation is not purely an internal one" because plaintiff filed suit in this Court and "the NYPD's disciplinary proceedings are interfering with the orderly functioning of the proceedings . . . considerations

## C.    Scope of the TRO

With respect to plaintiffs' allegation that defendants have already violated the TRO, defendants contend that plaintiffs "are asking the Court to bypass the NYPD's established internal procedures and allow Sergeant Scott to avoid any consequences for potentially serious violations of NYPD rules and regulations . . . ."[54] Defendants' position is unavailing.

As an initial matter, I view with great concern: *first*, defendants' inappropriate initiation of these investigations; and *second*, their use of the Court's TRO as a shield to block certain plaintiffs from retiring in good standing simply because those investigations cannot now proceed. Enjoining the IAB investigation into the perjury allegations should have no effect on the pursuit or resolution of any other disciplinary charges unrelated to plaintiffs' participation in this action. For defendants to refuse to proceed with the review of Sergeant Scott's plea agreement on wholly unrelated charges based on the fiction that the

---

of comity and federalism that would ordinarily weigh against federal intervention into a pending department inquiry do not come into play." *Id.* at 347 (citation omitted). *Accord Karmel*, 200 F. Supp. 2d at 363-64 (holding that federalism and comity do not preclude a court from enjoining the NYPD's interrogation pursuant to PG § 206-13 and "the Court need not wait until after the harm is done to protect the integrity of the Court's process and proceedings").

[54]     3/18/08 Letter from Lorie E. Almon to the Court, at 3.

TRO has effectively restrained all such action is a disingenuous attempt to expand the scope of the TRO to defendants' benefit.

Defendants are correct that a motion to alter the status quo by commanding a positive act – *i.e.*, mandating that defendants not only refrain from proceeding with its investigation, but that they review Sergeant Scott's plea agreement notwithstanding the pending investigation – rather than prohibiting an act must meet a higher standard.[55] "That is, in addition to demonstrating irreparable harm, the moving party must make a clear or substantial showing of a likelihood of success on the merits."[56] For the reasons stated in this Opinion, I find that plaintiffs have satisfied this rigorous burden. In addition, I reiterate that defendants may pursue any course of action against Sergeant Scott or other plaintiffs based on alleged perjury after this litigation has concluded. Far from avoiding any consequences, Sergeant Scott, or other plaintiffs, could then be subject to a variety of penalties including, presumably, an alteration of retirement benefits both retroactively and prospectively.

---

[55]     *See D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (citation omitted).

[56]     *Id.* (quotation marks omitted).

24

## V.    CONCLUSION

For the reasons stated above, plaintiffs' motion for a preliminary injunction is granted. It is hereby ordered that defendants the City of New York and the New York City Police Department and their agents, servants, employees, and any parties acting on their behalf are preliminarily enjoined from:

(1) engaging in any further investigation of Sergeant Anthony Cioffi relating to his testimony or participation in this matter;

(2) pursuing any disciplinary proceedings against plaintiff Cioffi based on his February 12, 2008 interrogation; and

(3) investigating or disciplining any plaintiff in this matter based on his or her testimony or participation in this lawsuit.

The Clerk of the Court is directed to close this motion [Document No. 74].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          March 21, 2008

**Appearances**

**For Plaintiffs**:

Lauren E. Schwartzreich, Esq.
Gregory K. McGillivary, Esq.
Woodley & McGillivary
1125 15th Street, Suite 400
Washington, DC 20005
(202) 833-8855

Andrew Quinn, Esq.
Quinn & Mellea
399 Knollwood Road, Suite 200
White Plains, New York 10603
(914) 997-0555

Stephen P. Younger, Esq.
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

**For Defendants**:

Lorie E. Almon, Esq.
Gerald Maatman, Esq.
Robert S. Whitman, Esq.
Seyfarth Shaw LLP
1270 Avenue of the Americas, Suite 2500
New York, New York 10020
(212) 218-5500

Michele Molfetta
Assistant Corporation Counsel
NYC Law Department, Office of the Corporation Counsel
100 Church Street

New York, New York 10007
(212) 788-0922